UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DirecTV, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TIM FERGUSON, KEVIN HINZ, SHAWN W. MEYER, TOM NASTOVSKI, MARC OBREGON, DAVID A. ROSS, LES SMITH, CYNTHIA C. STOCKRAHM, ROBERT A. WELCH, JR., ROGER N. WESTFALL, and JOHN DOES 1 THROUGH 10,<br><br>Defendants. | No. 1:03 CV 164 |

## REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant, Kevin Hinz, ("Defendant") hereby submits this Reply to DirecTV's consolidated opposition to motion for summary judgment.

The Court is respectfully requested to first focus on Exhibit 11, an affidavit of former DirecTV Senior Investigator John Fisher. Mr. Fisher confirms that DirecTV's campaign is "an elaborate extortion racket" characterized by "letters that are full of lies or misrepresentations," and "a cynical willingness to abuse the court system by filing some frivolous lawsuits and thereafter bullying 'little people' into settlements."

## I. SUMMARY

Despite the bulk of DirecTV's Opposition to Summary Judgment, DirecTV is unable to make the critical factual allegations required to defeat Defendant's summary judgment motion. Although DirecTV dances around these critical facts, and asks the Court to draw numerous inferences from affidavits, the affidavits are deficient. In addition, much of the affidavits are

1

improper anyway, and are the subject of a motion to strike. Because DirecTV is unable to provide admissible evidence of the critical elements of its claims, Defendant's motion for summary judgment must be granted on all counts.

DirecTV included an affidavit and "expert opinion" from Michael Barr of Netrino (DirecTV's consulting firm for its litigation campaign) with its response. Even if this report were considered, (and it should not be) DirecTV's Defendant is still entitled to summary judgment. DirecTV's "affidavit" should be disregarded as irrelevant for several reasons. Most importantly, DirecTV's "expert" never bothered to examine <u>any</u> of the smartcard reader/writers sold by Hinz. Therefore, there is no basis for his assumption that the devices the "expert" examined were identical or even similar to the smartcard reader/writers sold by Hinz. Second, the "expert's" "conclusions" go far beyond what the expert's purported field of expertise. Other courts have already discounted "expert" reports from Netrino (DirecTV's "expert" consulting firm) for this very reason.[1]

DirecTV's complaint uses the "shotgun" approach, asserting 11 different claims, and hoping at least one of them will stick. These claims can be broken down into four categories: (a) the Federal claim under 18 USC 2512 for "possession" of devices; (b) Federal claims focused on "distribution" of devices; (c) Federal clams requiring "Interception" of DirecTV's signals; and (d) State law claims. Each category will be addressed separately.

## The Alleged Federal Claim Involving "Possession" of Devices

---

[1] In *DirecTV v. Garnett*, Case No.: C-03-346 (SDTX 2/26/04) Exhibit A, the Court stated, "The Gatliff affidavit also contains several conclusions that appear to be beyond the scope of the affiant's expertise or the support for which is not included in the affidavit. See, e.g., page 4 ("Individuals and business involved in facilitating piracy generally…." And "Persons involved in piracy generally…") p 7 ("Developers of legitimate products . . . would not purchase preflashed chips at their higher prices."); p 9 ("The White Viper reader/writer was itself marketed for the purpose of circumventing DIRECTV's … access controls."). *Id,* at p. 11, n. 5.

2

- Claim 6 (18 USC 2512(1)(b) – "mere possession")  This claim fails because, as a matter of law, DirecTV is not entitled to assert a private cause of action under this section because "mere possession" is not actionable by DirecTV.  This is a simple matter of law; unless DirecTV proves "interception" (as discussed below) DirecTV has no standing..  This Court has already decided this issue adversely to Plaintiff DirecTV by Judge Sharp's ruling of April 16 in <u>DirecTV v. Hower,</u>  Case 3:03-cv-808-AS (ND IN 2004).  Regardless, the devices in this case are not "illegal" as noted below, so summary judgment on Claim 6 must be granted.

**<u>Federal Claims Involving "Interception" of Devices</u>**

Claims 1, 3 and 5[2] of DirecTV's complaint require that it prove "Interception."  Defendant's affidavit establishes that no interception occurred. (Hinz Aff. ¶ 2, 4, 5).  DirecTV offers three responses.

- <u>Possessing a Device is Not Evidence of Interception or Intent.</u>  DirecTV argues that "Why else would such a device be purchased . . . if not to use it for its intended purpose?" (Opposition, p. 14-15)  However, DirecTV improperly tries to convert a "possession" claim into an "interception" claim, and DirecTV has no "possession" claim, as noted above.

- <u>A Decrease in DirecTV "CallBacks" and Pay Per Views After Stopping DiercTV Service is Not Evidence of Interception.</u>  DirecTV argues that there is "circumstantial evidence" of interception because Hinz's DirecTV's receiver stopped "calling back" to DirecTV and he stopped buying Pay Per Views in about April, 2000. As the Court may take judicial notice, this is about the same time the stock market crashed and a nationwide recession began.   At this time, Defendant encountered financial difficulties, fell behind paying his bills, and decided to terminate his DirecTV subscription service.

---
[2] Claim 1 (47 USC 605(a)), Claim 3 (17 USC 1201(a), and Claim 5 (18 USC 2511(a)(1).

3

(Supplemental Hinz Affid. ¶ 3-4). DirecTV did not officially close Defendant's account until December, 2000, when we was able to pay off the past due amounts. This is not evidence of "interception." If it were, every person that terminated their DirecTV service would be a "pirate." Moreover, Courts have already ruled that this type of evidence is insufficient to create a genuine issue of material fact on the issue of Interception. Specifically, in *DirecTV v. Garnett,* Case No.: C-03-346 (SDTX 2/26/04) (Exhibit 7), the Court observed DirecTV's evidence regarding "lacking in call-backs" and "pay per view decrease," and stated, that this "is hardly evidence of illegal activity. . . . Moreover, there is no Correlation between Garnett's purchase of the device in September 2000 and with a corresponding decline in DIRECTV billing or use." *Id*, p. 10. Likewise, DirecTV itself admits that Hinz did not make the purchase in question until November 2000, 8 months <u>after</u> his DirecTV service was terminated. As in Garnett, there is no "corresponding decline in DIRECTV billing or use" for Mr. Hinz, so DirecTV's evidence of interception is insufficient to withstand summary judgment.

### **Federal Claims Involving "Distribution" of Devices**

Because DirecTV lacks any evidence of interception, one of its fall-back arguments is that the smart card technology sold by Hinz (a "Vector SMT") is illegal" to distribute. While it is agreed that Hinz ran an electronics distribution business that sold electronic devices, including smart card devices, DirecTV's argument fails for several reasons.

- <u>Vector SMT - Collateral Estoppel</u>  The device is simply not illegal. The analysis provided by DirecTV's "expert" for the "Vector SMT" purchased by Defendant, is identical to the analysis for the "WhiteViper Reader/Writer." Moreover, Hinz only purchased programmers from White Viper, not Vector (Hinz Depo., p. 48, ln. 1-10) The

4

expert makes absolutely no distinction between the two devices, so they may be deemed identical. (Barr Dec. ¶ 9-21) In DirecTV's Stipulation of Dismissal in <u>DirecTV v. Rochette</u> (Ex. 6 to Defendant's Memo), **DirecTV "concedes and admits that . . . the device purchased by Defendant (i.e. White Viper Reader/Writer) was 'a generic ISO 7816 card reader' and that the device 'is used to read, write, and modify ISO 7816 cards."** Not only did DirecTV concede this, but **the Court has since held "Plaintiff [DirecTV] had no basis to claim that the device at issue in this case was primarily designed for the purpose of altering DIRECTV access cards."[3]** Now, DirecTV, through its $350.00 / hr. "expert," now takes a contrary position. However, the doctrine of collateral estoppel makes DirecTV's admission, and the Court's holding, binding in this case. DirecTV's can not "buy" itself out of this issue by tendering the testimony of an expert witness.

- <u>"Emulators"</u>

    o <u>No Evidence of That Devices are Designed to Intercept.</u> While defendant has admitted to buying emulators from "Interesting Devices, U.K.," DirecTV has offered <u>absolutely no evidence</u> that these devices are intended to intercept DirecTV signals, or are even <u>capable</u> of intercepting DirecTV signals. These devices have never been examined by DirecTV's Expert. In the total absence of any information from DirecTV about the nature of these devices, Defendant's motion for summary judgment must be granted. Moreover, there are numerous

---

[3] *DirecTV v. Rochette*, Case No.: 1:03cv165 (WDMI 4/14/04) at p. 4. (Exhibit 8) Indeed, in the *Rochette* Order, **the Court invited the parties to submit additional briefing on the issue of whether DirecTV should be sanctioned** for forcing the defendant to file a motion for summary judgment, instead of simply dismissing the case because DirecTV "should have been aware that it had insufficient evidence to support its case without prompting from Defendant's motion."

types of emulators freely sold on the market by perfectly legitimate companies. (Overhauser Declaration, Ex. 10)

- o No Evidence of "Distribution". DirecTV makes the astonishing claim that "defendant Hinz has also admitted to the . . . resale of emulators from company identified as 'Interesting Devices, U.K.'. . . (Hinz Int. Ans. Nos. 11-12)" (DirecTV's Memo, p. 12) This is a blatant misrepresentation of the evidence. Although Hinz admitted to having purchased an emulator Board, there is no evidence whatsoever that he ever sold or distributed an emulator board. None of the statutes cited by DirecTV give DirecTV a claim against someone who merely purchases or possesses anything. Therefore, the claims premised on distribution must be dismissed.

- DirecTV is Not "Aggrieved" DirecTV lacks standing, because it has offered no evidence that Hinz or any of Hinz's customers ever intercepted DirecTV's signal. Even if it were assumed that a Reader/Writer were "illegal" (and it is not), DirecTV has not been harmed, or "aggrieved." Under DirecTV's logic, is someone distributes an illegal device, the person would be liable to anyone and everyone; DirecTV, DISH Network, CBS, Sony, and the person's next door neighbor. This would be an absurd result. As noted in Defendant's Memorandum, in the absence of interception (or DirecTV being a manufacturer of equipment, which it is not) DirecTV is not "aggrieved" by persons merely selling equipment.

**State Law Claims**

- Claim 7 (Unjust Enrichment). Hinz argues that there is no "unjust enrichment" because he never "intercepted." DirecTV makes two arguments in response. First, it argues that Hinz

did intercept. As noted above, this allegation is false. DirecTV also argues that Hinz benefited by realizing a profit from his sales of smart card technology. However, there is nothing "unjust" about selling products for a profit, this is the foundation of our economy. Any profit was not "unjust," and DirecTV has not offered a scintilla of evidence that it has been damaged in any way. Finally, DirecTV argues that Hinz's customers "siphoned off what otherwise would have been legitimate payment from [Hinz's] customers to DIRECTV for programming." However, DirecTV has tendered absolutely no evidence that any of Hinz's customers ever intercepted or would have subscribed to DirecTV but for their purchases from Hinz. DirecTV's unjust enrichment claim completely fails.

- Claim 8 (Tortious Interference with Contractual Relations) requires "Damages resulting from *Defendant's wrongful intentional inducement of breach*." This claim fails because Defendant never "induced" anyone to "breach" a "contract" with DirecTV (Hinz Aff. ¶ 7) DirecTV's response is that because it is possible such devices might have been used by Hinz's customers to construct a system to intercept DirecTV signals, that Hinz "induced" DIRECTV customers to breach their contracts with DIRECTV." However, DirecTV simply offer *no* evidence of such "inducement," so this claim fails.

- Claim 9 (Tortious Interference With Prospective Contractual Relations) This claim fails because there is no such cause of action in Indiana. DirecTV speculates that such a claim exists under Indiana law. Regardless of this theory, DirecTV totally fails to identify even a single customer of Hinz that would have entered into a contract with DirecTV but for the customer's purchase of smart card technology. Of course, DirecTV also offers no evidence that any customer of Hinz ever constructed a system capable of intercepted, or ever

intercepted DirecTV's signal. Therefore, Hinz is entitled to summary judgment on this Count.

- Claim 10 (Unfair Competition) fails because Defendant has never competed with DirecTV for anything, or sold any devices that compete with DirecTV. In response, DirecTV argues that by selling smart card technology that was "emulating DIRECTV equipment and technology. This is absurd. Smart card technology does not "emulate" DirecTV technology. Indeed, even DirecTV admits that to intercept its signal, a person would need a DirecTV receiver (or "IRD"). Thus, there would be no "competition" because any interceptor would have already purchased a DirecTV receiver anyway. This claim fails.

- Claim 11 (IC 35-43-5-6.5) applies only to devices for "a transmission by a *cable* television system," but DirecTV is merely a "direct-to-home *satellite* service provider" (Complaint)[4]. DirecTV responded by citing a Federal case interpreting the word "cable" under a *federal* statute. This is irrelevant, as interpretation of a federal statute has nothing to do with the Indiana statute DirecTV asserts in claim.

### Summary

Because there are no genuine issues of material fact, Defendant is entitled to summary judgment on all counts.

Respectfully submitted,

 s/Paul Overhauser
Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
479 Sycamore Ct.
Greenfield, IN 46140
(317) 326-8800
(866) 283-8549 (fax)

---

[4] ¶ 2:"DirecTV, Inc. is the nation's leading direct broadcast satellite system;" ¶ 2: "DirecTV has invested billions of dollars to develop the United States' first high-poser, direct broadcast satellite system. DirecTV delivers hundreds of channels . . . [via] a small satellite dish. . . DirecTV's satellite television programming currently includes .. . ."

Attorney for Defendant Kevin Hinz

Exhibits
    7    Orders granting summary judgment against DirecTV in:
           *DirecTV v. Garnett,* Case No.: C-03-346 (SDTX 2/26/04)
           *DirecTV v. Bush,* Case No.: H-03-1765 (SDTX 10/27/03)
           *DirecTV v. McFadden*, Case No.: 1:02-cv-924 (WDMI 10/22/03)
           *DirecTV v. Harnatkiewicz*, Case No. 02-3198-18 (CDSC 8/19/03)
    8    Order granting summary judgment against DirecTV in *DirecTV v. Rochette*, Case No.: 1:03cv165 (WDMI 4/14/04)
    9    Order granting summary judgment against DirecTV in *DirecTV v. Mosier*, Case No. 1:03-cv-307 (EDTX 4/19/04)
    10    Declaration of Paul Overhauser, Including:
           A - Fujitsu / Siemens Marketing Brochure
           B - Hitachi Marketing Brochure
           C – Amazon.com Marketing Brochure
    11    Declaration of John Fisher
    12    Supplemental Affidavit of Kevin Hinz

(Note- previously submitted Exhibits are as follows)
1. Deposition of Kevin Hinz (p. 18 L7-10, p. 22 L22 to p. 23 L11)
2. Affidavit of Kevin Hinz
3. DirecTV's Responses to Hinz's First Set of Discovery to DirecTV (No. 13)
4. Deposition of Larry Rissler (DirecTV Vice President of "Signal Integrity") Excerpts April 23, 2003 pp. 9-17)
5. Declaration of Kevin Izadshenas Excerpts p. 5 ¶13
6. Stipulation of Dismissal in <u>DirecTV v. Rochette</u>, 1:03CV065 WDMI 12/17/03.

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing is being filed electronically, and notice hereof will automatically be sent to all counsel of record that participate in electronic filing, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. In addition, if any attorneys are not participating in electronic filing, they have been mailed via first class mail postage notice hereof on the date this document is being electronically filed.

Nick J Thiros
Cohen and Thiros
200 E 90th Drive
Merrillville, IN 46410-7089

David A Ross
9917 East 00 North South
Greentown, IN 46936

David W Albert
514 S Francis
South Bend, IN 46617

Samuel L Bolinger
Suite 300
126 W Columbia Street
Fort Wayne, IN 46802

                                              _s/Paul Overhauser_____
                                              Paul B. Overhauser